**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Ahmad Bin Nasrullah, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART** |
| | ) | **AND DENYING IN PART** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| U.S. Citizenship and Immigration | ) | |
| Services, Director, | ) | Case No.: 1:25-cv-00183 |
| | ) | |
| Defendant. | ) | |

On August 4, 2025, Plaintiff Ahmad Bin Nasrullah ("Plaintiff") filed the above-captioned action through the filing of a Complaint. (Doc. No. 1). On October 15, 2025, Defendant U.S. Citizenship and Immigration Services, Director ("Defendant") filed a Motion to Stay due to a lapse in appropriations and ensuing government shutdown prohibiting Department of Justice attorneys from working on this matter. (Doc. No. 5). The court granted Defendant's motion and stayed the matter pending further order and required Defendant to file a motion to lift stay upon restoration of appropriations. (Doc. No. 6). On November 13, 2025, Defendant filed a Motion for Extension of Time to Answer and Notice of Restoration of Federal Funding, notifying the court that a government funding bill had been passed into law and requesting an additional sixty days to answer or otherwise respond. (Doc. No. 9). On November 14, 2025, the court granted Defendant's motion, lifted the stay and extended Defendant's responsive deadline to January 12, 2026. (Doc. No. 10). On January 9, 2026, Defendant filed a *Motion to Dismiss for Lack of Jurisdiction*. (Doc. No. 11).

On February 11, 2026, the court ordered Defendant to re-serve the pending motion to dismiss and supporting memorandum on Plaintiff, noting that the address listed in the Complaint was associated with a company operating in South Carolina where Plaintiff had purchased an online form Complaint, and the address associated on the signed consent/reassignment was

associated with a Minot, North Dakota address. (Doc. No. 13). The court further directed the Clerk's Office to update the docket to reflect the North Dakota address and advised Plaintiff he had twenty-eight (28) days from service of the motion to respond. (*Id.*). The same day, Defendant filed a Certificate of Service providing that a true and correct copy of the motion and corresponding brief were served by mail to Plaintiff at the Minot, North Dakota address. (Doc. No. 14). To date, Plaintiff has not responded to the pending motion.

## I.    BACKGROUND

Plaintiff's claims arise out of the Victims of Trafficking and Violence Protection Act's U Visa program, codified under 8 U.S.C. § 1101(a)(15)(U). Pursuant to this program, aliens may be granted temporary lawful nonimmigrant status and work authorization if it is determined:

> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);
>
> (II) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning criminal activity described in clause (iii);
>
> (III) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and
>
> (IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States….

8 U.S.C. § 1101(a)(15)(U)(i)(I)-(IV).[1] The petition must include a certification stating that the alien "has been helpful, is being helpful, or is likely to be helpful" in the investigation of criminal activity. 8 U.S.C. § 1184(p)(1).

---

[1] Clause (iii) defines criminal activity as "that involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law: rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; stalking; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail;

The U.S. Citizenship and Immigration Services ("USCIS") has sole jurisdiction over petitions for U nonimmigrant status. 8 U.S.C. § 214.14(c)(1). The number of aliens that may be issued visas or status as nonimmigrants under section 1101(a)(15)(U) cannot exceed 10,000 in a fiscal year. 8 U.S.C. § 1184(p)(2)(A). Eligible aliens who are not granted status due to the annual cap must be placed on a waiting list and receive written notice of such placement. 8 U.S.C. § 214.14(d)(2). Waiting list priority is determined by the date the petition was filed, with the oldest petitions receiving highest priority. *Id.* While on the waitlist, USCIS will grant deferred action or parole to petitioners, and at its discretion, may authorize employment for such petitioners. *Id.*

In 2008, the Immigration and Nationality Act was amended to provide, "[t]he Secretary [USCIS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). Upon the waitlist determinations becoming backlogged, the USCIS implemented the bona fide determination process to streamline employment authorization to aliens with pending bona fide U nonimmigrant status petitions. Chapter 5 – Bona Fide Determination Process, USCIS, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5. During the Bona Fide Determination ("BFD") process, the USCIS first considers whether the pending petition is bona fide, and then, at its discretion, "determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion." *Id.*

> As a matter of policy, USCIS interprets "bona fide" as part of its administrative authority to implement the statute as outlined below. Bona fide generally means "made in good faith; without fraud or deceit." Accordingly, when interpreting the statutory term within the context of U nonimmigrant status, USCIS determines whether a petition is bona fide based on the petitioner's compliance with initial evidence requirements and successful completion of backgrounds checks. If USCIS determines a petition is bona fide, USCIS then considers any national security and

---

extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; fraud in foreign labor contracting (as defined in section 1351 of Title 18); or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes…." 8 U.S.C. § 1101(a)(15)(U)(iii).

public safety risks, as well as any other relevant considerations, as part of the discretionary adjudication.

*Id.* If a petitioner is granted a Bona Fide Determination Employment Authorization Document ("BFD EAD") at the conclusion of the BFD process, the USCIS also exercises its discretion to grant deferred action for the pendency of the BFD EAD. If a petitioner is granted BFD EADs and deferred action, the USCIS will not conduct waiting list adjudications for them; instead, the next step is final adjudication when space is available under the statutory cap. *Id.* In instances where the USCIS determines a petitioner will not receive a BFD EAD, the process will proceed to full adjudication for waiting list placement. *Id.* If it is determined a petitioner will not receive BFD EAD and cannot be placed on the waitlist, the petition will be denied. *Id.*

Plaintiff is originally from Pakistan and had lived in the United States for approximately two years at the time he filed his Complaint. (Doc. No. 1 at 3). He currently resides in Minot, North Dakota. (*Id.* at 2). In October 2023, Plaintiff was the victim of an aggravated assault in Texas. (*Id.* at 3). In September 2024, Plaintiff filed an I-918 Petition for U Nonimmigrant Status and Form I-765 for work authorization. (*Id.*). There is no disqualifying criminal history, and to date Defendant has not taken any action on the pending applications. (*Id.*).

Plaintiff brought the Complaint on August 4, 2025, and alleges three claims under the Administrative Procedure Act ("APA"): (1) unreasonable delay for bona fide determination; (2) unlawful withholding of waiting list decision; and (3) unreasonably delayed waiting list decision. (*See* Doc. No. 1).

On January 9, 2025, Defendant filed a *Motion to Dismiss*, requesting the court dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. (Doc. Nos. 11-12).

## II.    LEGAL STANDARD

Federal Rules of Civil Procedure 12(b)(1) governs challenges to subject matter jurisdiction. The plaintiff bears the burden of establishing subject matter jurisdiction. *See Croyle by & through Croyle v. United States*, 908 F.3d 377, 831 (8th Cir. 2018) (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). "If it is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)." *Smith v. UnitedHealth Group, Inc.*, 106 F.4th 809, 813 (8th Cir. 2024). The protections under Rule 12(b)(6) require the court to accept all facts alleged in the complaint as true and draw reasonable inferences in favor of the nonmovant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729, n.6 (internal citations omitted).

In this instance, Defendant states it is bringing a facial challenge. (*See* Doc. No. 12 at 9). The court does not see a reason to depart from the application of a facial challenge to subject matter jurisdiction and so shall apply the Rule 12(b)(6) safeguards.

## III.    DISCUSSION

As previously noted, Plaintiff has not filed a response or otherwise objected to Defendant's motion. The Local Rules for the District of North Dakota provide that after the moving party files a dispositive motion, the adverse party has twenty-eight (28) days from the filing and service of the memorandum in support to serve and file a response. D.N.D. Civ. L.R. 7.1(A)(1)(a). An adverse

party's failure to serve and file a response to the motion *may* be deemed an admission the motion is well taken. D.N.D. Civ. L.R. 7.1(B)(5) (emphasis added).

While the court acknowledges its authority to deem Plaintiff's lack of response as an admission that the motion is well taken, the court shall also consider the merits of Defendant's motion.

Here, Defendant argues this court lacks jurisdiction over Plaintiff's claims as the decision to grant work authorization, including the determination of whether a petition is bona fide and will receive deferred action during the course of authorized employment, is discretionary. Defendant further contends Plaintiff's waitlist claims may also be dismissed for lack of jurisdiction under Rule 12(b)(1) as they are unripe and Plaintiff does not have a right to a waiting list review and determination ("WLD") while waiting for a BFD.

To the extent Plaintiff argues unreasonable delay pursuant to the factors laid out in *Telecommunications Research & Action Ctr. V. FCC ('TRAC')*, 750 F.2d 70 (D.C. Cir. 1984), such an analysis or recounting of the factors is not required here, where the issue is one of jurisdiction. *See Monroy v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25CV74, 2025 WL 1267767, at *5 (D. Ne. May 1, 2025) ("[T]he Court need not recount or summarize [the *TRAC* factors] at this point in the proceedings, where the issue is subject-matter jurisdiction, not whether Plaintiff states a claim upon which relief can be granted.").

### A. Unreasonably Delayed Bona Fide Determination

In his Complaint, Plaintiff first argues that the USCIS has unreasonably delayed a bona fide determination for his petition and requests the court order USCIS to issue a BFD within fourteen (14) days. In support of this contention, Plaintiff avers that 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude jurisdiction over BFD delay challenges, and the *TRAC* factors weigh in favor of

compelling state action. *See Telecomm. Rsch & Action Ctr v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Defendant alleges that this court lacks subject matter jurisdiction over Plaintiff's claims for a BFD.

Defendant points to 8 U.S.C. § 1184(p)(6) and 8 U.S.C. § 1252(a)(2)(B)(ii), arguing that Congress precluded review of EAD determinations for bona fide petitions by rendering the determinations discretionary. Pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii),

> [N]o court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Under this provision, the court is banned from exercising jurisdiction over (1) a decision or action of the Attorney General or Secretary of Homeland Security, or (2) statutorily defined sections under Subchapter II of Chapter 12 of Title 8. *See Joshi v. Garland*, 728 F. Supp. 3d 1028, 1033 (D. Neb. 2024). This includes 8 U.S.C. § 1184. *Id.*

The language of 8 U.S.C. § 1184(p)(6) further states that "[t]he Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." (emphasis added). The use of the word "may" is suggestive of discretion. *Id.*; *see also Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024).

Because Congress has jurisdictionally stripped federal courts of jurisdiction to review discretionary decisions of the Attorney General or Secretary of Homeland Security, and the BFD is part of the discretionary process, Claim One must be dismissed for lack of subject matter jurisdiction.

### B. Unlawful Withholding or Unreasonable Delay of Waiting List Decisions

Plaintiff argues in the alternative that the USCIS is unlawfully withholding or unreasonably delaying waiting list decisions under 8 U.S.C. § 214.14(d)(2). He requests the court declare the USCIS's refusal to make a waiting list decision unlawful and order USCIS to make a waiting list determination within a reasonable time or declare USCIS's delay in making a waiting list decision unlawful and order the USCIS to make a waiting list decision within thirty (30) days. Defendant argues that Plaintiff is not entitled to a WLD while awaiting a BFD.

As an initial matter, eligible petitioners who are not granted U-1 nonimmigrant status, solely due to the cap, *must* be placed on the waiting list and receive notice of the placement. 8 U.S.C. § 214.14(d)(2). Because placement on the waitlist is nondiscretionary, it is not exempted from judicial review under the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii). *See Patel v. U.S. Citizenship & Immigr. Servs.*, No. 1:25-CV-00114-ACL, 2026 WL 146496, at *5 (E.D. Mo. Jan. 20, 2026) (concluding that placement of eligible petitioners on the waiting list is not discretionary and so is not exempted from review under 8 U.S.C. § 1252(a)(2)(B)(ii)).

Turning to Defendant's argument that Plaintiff is not entitled to a WLD while awaiting a BFD, the court is inclined to disagree. There is no requirement that a petitioner's BFD process be completed prior to a WLD. *See Prajapati v. Alfonso-Royals*, No. 4:25-CV-00258-DGK, 2026 WL 36451, at *6 (W.D. Mo. Jan. 6, 2026).

> A WLD is not legally contingent on a speculative future BFD, and Plaintiff's claim for unreasonable delay is therefore fit for judicial decision. While it may be true as a matter of current USCIS practice (as embodied in its Policy Manual) that a BFD comes before a WLD, this is not required by either statute or regulation. U-visa applicants can be funneled into either the BFD EAD track or the waitlist track – the tracks are separate.

*Id.* (internal quotation marks and citations omitted). Because eligible petitioners who are not granted U-1 nonimmigrant status solely because of the cap are required to be placed on the waiting

8

list, and the plain language of the regulation does not limit WLD eligibility to those who received an unfavorable BFD, petitioners are not legally required to acquire a BFD before being entitled to a WLD. *See Id.*

As placement on the waitlist is not discretionary, it is not exempted from this court's review. Accordingly, the court shall permit Plaintiff to proceed with Claims Two and Three as to the unlawful withholding or unreasonable delay of a WLD. At this time, the court will not address Plaintiff's request for the court to deem USCIS's refusal or delay in making a WLD as unlawful and direct a WLD to be made.

## C. Ripeness

Defendant requests the court dismiss Plaintiff's waitlist claims for lack of jurisdiction under Rule 12(b)(1) as they are unripe. "To demonstrate that an alleged dispute is ripe for review, the complainant must show both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. A case is fit for judicial decision when it would not benefit from further factual development and poses a purely legal question not contingent on future possibilities." *Patel*, 2026 WL 146496, at *5 (quoting *Sch. of the Ozarks, Inc. v. Biden*, 41 4th 992, 998 (8th Cir. 2022) (internal quotation marks and citations omitted)). For a U-visa plaintiff to demonstrate hardship, he "'must show he has sustained or is immediately in danger of sustaining some direct injury' due to USCIS's allegedly unreasonable delay or withholding of a WLD." *Patel*, 2026 WL 146496, at *5 (quoting *Noorani v. Dir. of U.S. Citizenship and Immigr. Servs.*, No. 8:25-cv-221, 2025 WL 3282296, at *2 (D. Neb. Nov. 25, 2025)). "A case is not ripe when it … depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Noorani*, 2025 WL 3282296, at *2 (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)).

Other courts in the Eighth Circuit have addressed parallel arguments. The court is persuaded by the analysis made by the District of Nebraska in *Noorani*.

> Noorani counters that his waitlist claims are ripe because the discretionary BFD process does not eliminate USCIS's regulatory duty to make WLDs. *See* 8 C.F.R. § 214.14(d)(2) (stating that "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list") (emphasis added). Noorani contends no additional facts are necessary for the Court to review this legal question of whether a policy statement can eliminate a regulatory duty. He argues he has established hardship because as long as his WLD is delayed or withheld, he does not have the protection from physical removal that deferred action provides, nor does he have the ability to qualify for an EAD—and by extension a social security number and driver's license.
>
> The Court is not persuaded by the Director's argument that Noorani's WLD claims are "contingent" on the BFD process. While a speedy and favorable BFD may deprive some U-visa petitioners of the requisite injury-in-fact to bring a WLD claim, that is not the case here. Noorani has not had a BFD—favorable or otherwise. The waiting-list regulation states that eligible petitioners who are not granted a U-visa due to the cap "must" be placed on the waiting list. 8 CFR § 214.14(d)(2). The plain language of the regulation does not limit WLD eligibility to petitioners who received an unfavorable BFD. Thus, the Court does not see the BFD process as a contingent future event. *See generally Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022) (noting that USCIS "wields sole and unadulterated discretion to set forth, abide by, and eliminate the BFD process").
>
> Furthermore, Noorani's amended complaint alleges that USCIS is both unlawfully withholding his WLD in favor of the BFD process and unreasonably delaying his WLD. Noorani's WLD is currently delayed. And the Director does not deny that USCIS might not even conduct a WLD for Noorani. Indeed, that is the Director's principal argument—that USCIS may not need to conduct a WLD for Noorani. Noorani's WLD claims represent a challenge to actual agency delay and inaction, not a speculative delay. Noorani has also established that he experiences the hardship because he lacks deferred action and the opportunity to pursue an EAD. The Court therefore concludes that Noorani's WLD claims are ripe.

*Noorani*, 2025 WL 382296, at *3.

Plaintiff makes a similar argument here. There has been no decision by USCIS on Plaintiff's petition, filed in September 2024. Plaintiff argues Defendant is unlawfully withholding a WLD or unreasonably delaying a WLD. Plaintiff argues that due to the delay or withholding he is unable to acquire deferred action, work authorization, driver's licenses, social security numbers, bank accounts and may be in jeopardy of physical removal from the United States. (*See* Doc. No.

1 at 18-19). The assertion that Defendant is unlawfully withholding or unreasonably delaying a WLD is "a challenge to actual agency delay and inaction, not speculative delay." *Noorani*, 2025 WL 382296, at *3. As Plaintiff has demonstrated hardships, the court concludes his WLD claims are ripe.

### D. Use of Form Documents

Finally, though not raised by Defendant in its motion, the court is inclined to address the use of Plaintiff's form Complaint. A footnote in Plaintiff's Complaint reads as follows:

> Plaintiff purchased this form document through www.prosepro.co, a company operating in South Carolina. Plaintiff consulted no attorney in the drafting or filing of this document. Rather Plaintiff purchased a pre-written form then filled in the digital "blanks" on their own. *See*, *e.g.*, https://www.technethics.com/assets/Medlock-v-LegalZoom.com-Inc.pdf.

(Doc. No. 1 at 1 n. 1).

Similar forms have appeared in other districts, raising similar arguments to those brought by Plaintiff in this matter. *See Patel v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25CV59, 2025 WL 1655294 (D. Neb. June 11, 2025); *Patel v. U.S. Citizenship & Immigr. Servs.*, No. 1:25-CV-00114-ACL, 2026 WL 146496 (E.D. Mo. Jan. 20, 2026). Courts in these districts have concerns about the use of such documents. For example, in Patel, the court discussed the potential ethical issues arising out of the use of such forms.

> Patel's explanation addressed other questions the Court had over the origins and circumstances of these "*pro se*" filings. As he explained, the form complaint utilized by Patel and over one-hundred other litigants was prepared and sold by Pro Se Pro, a company based in Isle of Palms, South Carolina. Some of the Court's initial concern over these filings came from the fact that those pleadings all provided the same address in Dover, Delaware, for the service of future filings despite the fact that each plaintiff provided their home address in their complaint. Given what was discussed at the hearing, it seems the service of documents to that address likely caused the plaintiffs' delays in responding to pending motions to dismiss.

> While those questions were answered, new ones arose. To start, although the use of form complaints may be appropriate at times, so-called "ghostwriting" by an attorney without attribution is a violation of Nebraska Rule of Professional Conduct

§ 3-501.2(c). *See* NEGenR 1.8(a) (adopting the Nebraska Rules of Professional Conduct "as the rules of this court"). That rule also applies to Pro Se Pro's preparation of substantive responses to the Director's motions to dismiss.

One of the apparent founding members of Pro Se Pro is an attorney who has appeared in this Court in similar cases. And as an attorney admitted to practice in this Court, he is bound by the Nebraska Rules of Professional Conduct. *See id.*; *see also* S.C. App. Ct. R. 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction or assist another in doing so."). On the other hand, if non-attorney employees of Pro Se Pro have prepared the detailed responses to the Rule 12(b)(1) motions filed in these cases, that practice would likely raise unauthorized-practice concerns. *See, e.g.*, Neb. Sup. Ct. R. § 3-1001 (defining the "practice of law" as "the application of legal principles and judgment with regard to the circumstances or objectives of another" including the "drafting ... of legal documents which affect the legal rights" of a person).

Despite its concerns, the Court will fully consider both parties' briefs and rule on the motion to dismiss based on those filings. However, it advises the lay and lawyer members of Pro Se Pro that they should heed the prohibitions of the Nebraska Rules of Professional Conduct noted above.

*Patel*, 2025 WL 1655294 at *2 n. 3; *see also Patel,* 2026 WL 146496, at *8 ("As Defendant notes, the same ethical concerns cited by Judge Rossiter apply under Missouri law. Under Missouri Revised Statute § 484.020.1, no person or entity 'shall engage in the practice of law' in Missouri unless having been duly licensed by the State.").

The situation here is similar to that in the Eastern District of Missouri, and dissimilar from that of the District of Nebraska. While the Plaintiff in the District of Nebraska utilized a substantive response to the Director's motion to dismiss that was prepared by Pro Se Pro, the only document filed by the Plaintiff in the Eastern District of Missouri was the Complaint, in which Plaintiff stated he did not consult an attorney in drafting the Complaint, but rather purchased and completed the blanks on his own. Such is the case here. Along with his Complaint, Plaintiff submitted a "Certification on the Use of Artificial Intelligence," certifying that while artificial intelligence was not used to draft the filing, the filing was a pre-written template purchased from a legal services provider that was not a law firm or attorney, and no attorney modified, reviewed, or participated

in the drafting of his filings. (*Id.* at 23). Plaintiff further noted that he completed the blanks in the template with information about his specific case, and no attorney assisted in the process. (*Id.*).

As with other courts in this Circuit, the court cautions both Pro Se Pro and Plaintiff that it will not accept "ghostwritten" filings. Any future filings by Plaintiff shall be written in his own words. Failure to comply with this directive may result in sanctions.[2]

## IV.    CONCLUSION

For the reasons articulated above, the court **GRANTS IN PART AND DENIES IN PART** Defendant's *Motion to Dismiss for Lack of Jurisdiction*. (Doc. No. 11). Claim One is dismissed. The Plaintiff may proceed with Claims Two and Three. Defendant is directed to answer the remaining claims by April 17, 2026.

Plaintiff should take heed that should he fail to participate in this matter going forward, the court may deem his claims abandoned and impose sanctions up to, and including, dismissal of this action.

**IT IS SO ORDERED.**

Dated this 3rd day of April, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court

---

[2] As a final note on Pro Se Pro, Plaintiff included a document requesting as follows: "I will also note that while I live in ND, I am using a mailing service to ensure that I do not miss any important mailings for this case. It is based out of South Carolina." (Doc. No. 1-2 at 1). This court previously noted that the South Carolina address appeared to be associated with the company from which Plaintiff purchased the form Complaint, and not his residence. The court therefore directed the Clerk's Office to update the docket to reflect the North Dakota address and ordered Defendant to re-serve its Motion to Dismiss on Plaintiff at the North Dakota address. It is likely that service of documents to the South Carolina address resulted in Plaintiff's failure to receive the documents or a delay in Plaintiff's ability to respond.